UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SNOWCAST SOLUTIONS LLC,

    Plaintiff,

v.

ENDURANCE SPECIALTY HOLDINGS,
LTD.,

    Defendant.

No. 15 CV 5305

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

SnowCast Solutions LLC brought claims against Endurance Specialty Holdings, Ltd. for infringing U.S. Patents Nos. 8,543,427 and 8,924,242 and for violating the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2. Endurance now moves to dismiss the patent claims for asserting ineligible subject matter, under 35 U.S.C. § 101 and *Alice Corp. Pty. Ltd. v. CLS Bank International et al.*, 134 S.Ct. 2347 (2014), and to dismiss the deceptive trade practices claim for failing to allege deceptive or misleading conduct.

For the following reasons, the motion to dismiss is granted.

**I.    Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (citing *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)). Patent eligibility is a legal question that may be resolved by reference to

the complaint and the patent, without factual development, when the claims—considered in a manner most favorable to the non-movant—do not amount to more than an abstract idea without a transformative inventive concept. *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) ("Patent eligibility under 35 U.S.C. § 101 is an issue of law reviewed de novo."); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) ("Although the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter, claim construction is not an inviolable prerequisite to a validity determination under § 101."). There can be no infringement without patent eligibility. *See Content Extraction & Transmission*, 776 F.3d at 1351 (affirming Rule 12(b)(6) dismissal of patent infringement claims on the ground that the asserted patents are invalid as patent-ineligible under § 101).

## II. Analysis

### A. Patent Infringement Claims

SnowCast's asserted patents disclose "a system for managing financial risk associated with weather-based service contracts, and more specifically, to a system for managing and minimizing financial risk associated with the purchase of weather-related services." '427 patent at 1:5–9; '242 patent at 1:12–16. The '242 patent (issued in December 2014) is a continuation-in-part of the '427 patent (issued

in September 2013), and the patents share nearly identical specifications.[1] Although broadly written to cover "weather-related services," the patents were intended to create an alternative to fixed price or per event contracts for snow-removal providers, whose clients include entities requiring snow removal at multiple locations, such as municipalities or shopping mall owners. '427 patent at 1:36–43, 2:47–3:23. According to the patents, fixed price or per event contracts may be disadvantageous to a snow-removal provider because of the vagaries of snow precipitation, which could result in excess or too little snow. *Id.* at 2:47–3:23. For example, in one embodiment, the patented system could be used by a snow-removal provider, who inputs weather and cost data to calculate a tick price (i.e., an option payment per increment of snow precipitation) greater than the cost of removing the increment of snow; the tick price covers the additional price of offering snow-removal but also is directed at paying back the invested capital for snow removal if extraordinary snows occur. *Id.* at 10:15–46.

### 1. The Effect of USPTO's post-*Alice* Review

SnowCast contends that the '242 patent survived an additional U.S. Patent & Trademark Office (USPTO) review undertaken in light of *Alice* and therefore should be presumed valid and exempted from Endurance's *Alice*-based motion to dismiss.

The '242 patent is not exempt from the motion. SnowCast's Notice of Allowance issued in March 2014, several months before the June 2014 decision in

---

[1] Citations to the '427 patent are to docket entry [1-1] and citations to the '242 patent are to [1-2], cited as column:row. The parties cite primarily to the '427 patent in their briefs. The '427 patent has one independent claim and three dependent claims, and the '242 patent has one independent claim and fifteen dependent claims.

*Alice*; SnowCast has made no showing that the '242 patent was one of the "small group" of patent applications pending issuance that were re-reviewed by the USPTO after *Alice* issued. [20-1] at 2–3.[2] But in any event, "a court is not bound by the PTO's actions and must make its own independent determination of patent validity." *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005).

### 2. Patent Eligibility

*Alice* requires first determining "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2355 (2014). "Abstract ideas" are not patentable under 35 U.S.C. § 101. *Alice*, 134 S.Ct. at 2355. Endurance maintains that the asserted patents are directed to the abstract idea of using a computer to carry out traditional methods of pricing and hedging weather derivatives and therefore fall outside eligible subject matter under 35 U.S.C. § 101. SnowCast concedes that the use of weather derivatives to hedge risk is known and practiced, as is explained in the asserted patents, but argues that the claims do not price weather derivatives. [20] at 18; '427 patent at 3:42–49, 4:19–25. According to SnowCast, the claims cover an innovative technological system that connects—via a computer network—a weather database and a database of already-priced weather derivatives (the "weather options database") to computer-implemented modules. These modules are used to calculate the cost of weather-related services such as snow removal at one or more sites (the "unitary event module" and "global module"), to calculate a tick price and a premium for a selected

---

[2] Bracketed numbers refer to entries on the district court docket.

4

weather option (the "hedge assignment module"), and to report proposals to clients (the "reporting module"). '427 patent at 7:24–10:59, Claim 1; '242 patent at Claim 1.

SnowCast's gloss on the asserted patents is not distinguishable from the unpatentable abstract idea of hedging risk, here as applied to the weather-related services market. The patent eligibility of each claim must be considered, *Alice Corp.*, 134 S.Ct. at 1255, but where, as here, "the claims of the asserted patents are substantially similar in that they recite little more than the same abstract idea," addressing each claim is "unnecessary." *Content Extraction & Transmission*, 776 F.3d at 1348. The independent claims (Claim 1 in both asserted patents) are representative of the "weather risk management system" claimed in the asserted patents.

Both independent claims describe "[a] computer implemented method" for "the risk management and cost containment of weather-related services"—i.e., hedging, or protecting against risk from weather changes in weather-related business services, such as snow removal. The independent claims further describe a method of hedging in this field: the user enters data into the "unitary event module" for calculating cost at a particular site, the "global module" calculates "at least a base price for services" at "a plurality of sites" from "the unitary event module," and the hedge assignment module calculates "a tick price and an associated premium for the selection of an option for managing the risk and containing the cost of weather-related services." This system is implemented on computer "in data communication" with the weather database and weather option database via a

computer database: weather data is uploaded to the unitary event module and weather option data is uploaded to the hedge assignment module. '242 patent at Claim 1; '427 patent at Claim 1.

The dependent claims merely add steps for tweaking the data inputs and calculations in this system. For example, Claim 10 of the '242 patent—which SnowCast asserts should be the representative claim because it contains the greatest number of steps—describes the method of Claim 1, wherein: (1) "the method further includes the step of calculating a strike price at the nominal yearly weather precipitation based on the option selected by the hedge assignment module;" (2) "the hedge assignment module further imports a value for premiums for at least an option contract from the weather option database;" (3) "the method further includes the step where the hedge assignment module iteratively determines a tick price for the option from the weather option database that includes a payout of the base price plus the premium from the weather events database an ultimate coverage;" (4) "the method further includes the step where the ultimate coverage desired is calculated by a precipitation of twice the nominal yearly weather precipitation." These four additional steps fine-tune the weather risk management system by adjusting calculations and data inputs, but do not change the fundamental purpose of the system itself, which is to hedge costs for

weather-related services. Even if Claim 10 of the '242 patent were the representative claim, it is drawn to the abstract, patent ineligible idea of hedging.[3]

As held by the Supreme Court in *Bilski v. Kappos*, the concept of hedging, or "protecting against risk," is a "fundamental economic practice long prevalent in our system of commerce" and "is an unpatentable abstract idea." 561 U.S. 593, 611 (2010); *see DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) ("We know that some fundamental economic and conventional business practices are also abstract ideas.") (citing for *Bilski* for the proposition that hedging is a patent ineligible abstract idea). "[L]imiting an abstract idea to one field of use,"—for example, limiting hedging to the weather-related services market—"or adding token postsolution components [does] not make the concept patentable." *Bilski*, 561 U.S. at 612.

### 3. Inventive Concept

To differentiate the asserted claims from abstract risk-hedging claims, SnowCast says that the asserted patents describe a new, computer-implemented technological system that allows weather-related service providers to rapidly hedge risks for weather-related services, pointing to three "crucial technological improvements" of the asserted patents: (1) fast, iterative calculations made possible by a "special-purpose" computer, (2) detailed historical weather information for a plurality of areas, quickly accessed using a data network, and (3) detailed

---

[3] The patent specifications also note that the patented "weather risk management system" can be implemented by a "hedge trader" or "hedging service provider," not just a weather-related service provider. '427 patent at 4:48–50, 10:60–66.

7

information regarding available options for a plurality of areas. [20] at 18–19. SnowCast argues that "[n]one of these aspects were possible prior to the development of fast computers, high-speed data networks, and detailed, searchable databases" and that previously, "an individual would have needed to repeatedly perform iterative calculations in order to obtain a cost." [20] at 19. For similar reasons, SnowCast also contends that even if the asserted patents were drawn to an abstract concept, they are still patent-eligible because they set forth multiple inventive concepts, specifically: data input from weather and weather option databases, user entry of site-related data, iterative calculations linked with premium value, and the USPTO's admission of the novelty of these features. [20] at 23.

The second step of an *Alice* patentability analysis is to "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice Corp.*, 134 S.Ct. at 2357 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1294, 1298 (2012)). "Generic computer functions" are not enough to transform an abstract idea into a patent-eligible invention. *Id.* at 2359–60 (citing *Mayo*, 132 S.Ct. at 1294, 1297); *see id.* at 2358 ("[I]f a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' that addition cannot impart patent eligibility.") (quoting *Mayo*, 132 S.Ct. at 1301) (internal citation omitted); *DDR Holdings*, 773 F.3d at 1256 ("[A]fter *Alice*, there can remain no doubt: recitation of generic computer limitations does not make

an otherwise ineligible claim patent-eligible."). Otherwise, "an applicant could claim any principle of the physical or social sciences by reciting a computer system configured to implement the relevant concept." *Alice Corp.*, 134 S.Ct. at 2359.

Viewed separately and as a whole, the claims describe "[p]urely conventional" computing functions. *Alice Corp.*, 134 S.Ct. at 2359 (quoting *Mayo*, 132 S.Ct. at 1298). To minimize cost risk due to weather uncertainty, the system takes data entered by a user, links to existing databases, and follows an algorithm to calculate numbers. This is generic computing.[4] Even construing the claims in the manner most favorable to SnowCast, neither the claims nor the specification identify any requirements for a "special-purpose" computer (a term found only in SnowCast's brief), and the '242 patent claims tend to belie any required specialization. Claim 13 specifies an embodiment of "wherein the weather risk management system is implemented via a spreadsheet software, and the computer network is an Internet." Claim 14 specifies an embodiment "wherein the data communication to a computer network for the transfer of input information from a weather database and a weather option database is conducted manually by an operator operating browsing

---

[4] *Trading Technologies International, Inc. v. CQG, Inc.*, No. 05-CV-4811, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015), did not articulate a new, applicable technology test under *Alice*. The court applied the same two-step test applied here. 2015 WL 774655 at *3–5. The patent claims in *Trading Technologies* are distinguishable because they solved a new problem exclusive to electronic trading (i.e., latency between the change in prices and a trader's action) and added an "inventive concept" by pioneering a price display that juxtaposed and integrated conventional price displays in a manner that facilitated the solution to the latency problem. *Id.* at *4–5. In contrast, SnowCast's claims merely recite generic computer functions of using computer networks and databases and performing repetitive calculations on a computer, and "do not, for example, purport to improve the functioning of the computer itself." *Alice Corp.*, 134 S.Ct. at 2359.

different HTML pages on a display of the computer." These are descriptions of routine, generic computing.[5]

SnowCast argues that one inventive concept is the system's use, via a computer network, of both a weather database and a weather option database. [20] at 23–24. *See, e.g.*, '242 patent at Claim 1 ("connecting a weather risk management system implemented into a computer in data communication to a computer network for the transfer of input information from a weather database and a weather option database" and "entering into the weather risk management system input information from the weather database and the weather option database"), Claim 4 ("wherein the unitary event module imports a yearly estimate from the weather database"), Claim 8 ("the hedge assignment module further imports a value for premiums for at least an option contract from the weather option database"). But "generic computer components such as an 'interface,' 'network,' and 'database'" do not satisfy the inventive concept requirement. *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016); *see also buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (sending information over a network is "not even arguably inventive"); *Accenture Global Servs. GmbH v. Guidewire Software, Inc.,* 728 F.3d 1336, 1344–45 (Fed. Cir. 2013) (database components did not make claims patent-eligible).

---

[5] Similarly, the specification describes embodiments using a computer network "such as the Internet, [or] a local area network (LAN);" manual data entry "via a keyboard, a mouse, or other user interface;" and implementing the weather risk management system "via spreadsheet software." '427 patent at 6:62–63, 7:22–23, 11:9–10.

SnowCast contends that the weather risk management system's "iterative" (i.e., repetitive) calculations are an inventive concept—for example, the hedge assignment module's tick price calculations. [20] at 25–26. *See, e.g.*, '242 patent at Claim 1 ("calculating by the unitary event module from the entered input information the cost at the site in the area," "calculating the base price for services," and "calculating the tick price and the associated premium for the selection of the option"), Claim 9 ("the hedge assignment module iteratively determines a tick price for the option from the weather option database"). But these steps merely employ a computer "for its most basic function, the performance of repetitive calculations." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)); *see DDR Holdings*, 773 F.3d at 1256 ("[M]athematical algorithms, including those executed on a generic computer, are abstract ideas.") (citing *Benson*, 409 U.S. at 64).

The remaining inventive concept identified by SnowCast is the user's manual entry of "any type" of data specific to the weather-service site (e.g., location, area size, cost elements) into the unitary event module, which is then used to evaluate the relative importance of the site and to correct the rates and ratios of the different fixed costs associated with performing the weather services at different sites. [20] at 26–27. *See, e.g.* '242 patent at Claim 1 ("calculating by the unitary event module from the entered input information the cost at the site in the area"), Claim 2 ("the unitary event module includes a sizing data entry interface for entry of data for the at least one site in the area, and the method includes the step of entering data for

11

the at least one site in the unitary event module"). This too merely recites the generic computer function resulting from making calculations based on manual data entry.

For example, the specification explains that data entry into the unitary event module "is entered, often manually by an operator on a user interface of the device," such as "via a keyboard, a mouse, or other user interface." '427 patent at 7:22–23, 7:53–54. And the unitary event module's cost calculations can be determined by using a spreadsheet. '427 patent at 7:57–60; *see also* '242 patent at Claims 13–14 (claiming embodiments implementing the weather risk management system via a spreadsheet or internet browser). These functions, as in *Alice*, are "purely functional and generic" components for "performing the basic calculation, storage, and transmission functions required by the method claims." *Alice Corp.*, 134 S.Ct. at 2360; *see Accenture*, 728 F.3d at 1345 ("The limitations of claim 1 are essentially a database of tasks, a means to allow a client to access those tasks, and a set of rules that are applied to that task on a given event. Although the specification of the '284 patent contains very detailed software implementation guidelines, the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer.").

Finally, because the '242 patent's Notice of Allowance permitted the patent application to issue, SnowCast argues that it should be "assume[d]" that the combination of features in the '242 patent is more than an abstract concept. [20] at 28. But, as noted above, a court is "not bound by the PTO's actions." *Medrad, Inc.*,

401 F.3d at 1322. Moreover, the case law establishes that hedging is a patent-ineligible abstract idea and that the computer-implemented steps outlined in SnowCast's asserted claims are no more than "generic computer functions" that fail to transform the abstract idea of hedging into a patent-eligible invention. *Alice Corp.*, 134 S.Ct. at 2355–57, 2359–60. The Notice of Allowance is no indicator of eligibility or inventiveness.

SnowCast's patent infringement claims against Endurance are dismissed for lack of patent-eligible subject matter.

B.   **Deceptive Trade Practices Claim**

SnowCast alleges that Endurance violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(a)(5) and 2(a)(12), because Endurance sells contracts which its clients believe are legal and non-infringing, and because customers in the industry may be misled into thinking that Endurance's contracts are non-infringing or perhaps licensed from SnowCast. Endurance moves to dismiss this claim on the basis that SnowCast failed to allege that Endurance made false or disparaging statements about SnowCast's products or services, represented affiliation with SnowCast, or created a likelihood of confusion or misunderstanding.

SnowCast counters these arguments only with the statement that "so long as the SnowCast's [sic] patents are valid, Defendant's continued marketing of infringing systems constitutes unfair competition." [20] at 4–5.[6] By failing to

---

[6] Because SnowCast's state-law deceptive trade practice claim is premised on the validity of its patents, supplemental jurisdiction over this state-law claim remains. 28 U.S.C. § 1367(a). Federal jurisdiction over supplemental state-law claims is typically relinquished

13

substantively respond to Endurance's arguments, SnowCast has waived any supporting arguments. *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).

Moreover, the Act allows for only injunctive relief, not damages. *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill.App.3d 1, 9 (1st Dist. 2009) (citing 815 ILCS 510/3); *Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 464 F.3d 651, 659 (7th Cir. 2006). Because SnowCast's patents are not patent eligible, they are not enforceable, there is no deception to be enjoined, and the claim is dismissed.

### III. Conclusion

Endurance's motion to dismiss [17] is granted. The patent ineligibility cannot be cured through amendment, therefore the dismissal is with prejudice. Enter judgment in favor of defendant, and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date: 3/23/16

---

when all federal claims are dismissed. *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012). But where the supplemental state law claim turns on the very same issue that the court has already addressed, concerns of judicial economy and federal intrusion into areas of state law are minimized, and there is little reason not to address the state claim. *Id.* at 479–80.